## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGTION

In Re US Foodservice
Inc. Litigation

MDL No. _____

### MEMORANDUM IN SUPPORT OF MOTION FOR
### TRANSFER AND CONSOLIDATION OF RELATED ACTIONS TO
### THE DISTRICT OF CONNECTICUT PURSUANT TO 28 U.S.C. § 1407

Pursuant to 28 U.S.C. § 1407, Waterbury Hospital, Cason, Inc., and Frankie's Franchise Systems Inc. (collectively, the "Waterbury Plaintiffs"), plaintiffs in the action entitled *Waterbury Hospital, et al. v. U.S. Foodservice, Inc.*, Civil Action No. 06-01657 (D. Ct.) (CFD) (the "Waterbury Action"), which has been pending in the United States District Court for the District of Connecticut since October 19, 2006, respectfully request that the Judicial Panel on Multidistrict Litigation (the "Panel") transfer two recently filed duplicative actions brought by the same attorneys to the District of Connecticut for coordinated and consolidated pretrial proceedings with the Waterbury Action.

### PRELIMINARY STATEMENT

The Waterbury Plaintiffs initiated their action against U.S. Foodservice, Inc. ("USF") on October 19, 2006.[1] On August 17, 2007 – approximately ten months after

---

[1] A copy of the operative complaint in the Waterbury Action is attached hereto as Exhibit A.

the commencement of the Waterbury Action and many months after the initiation of discovery in that action – Catholic Healthcare West ("CHW") filed a substantively identical action in the United States District Court for the Northern District of California entitled *Catholic Healthcare West v. Koninklijke Ahold N.V., et al.*, Civil Action No. 07-4242 (N.D. Ca.) (the "CHW Action").[2] CHW is represented in the CHW Action by the law firm Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"). One week later, on August 24, 2007, Akin Gump filed a virtually identical complaint on behalf of a different plaintiff in the United States District Court for the Southern District of Illinois in an action entitled *Thomas & King, Inc. v. Koninklijke Ahold N.V., et al.*, Civil Action No. 07-608 (S.D. Ill.) (the "T&K Action")[3] (the CHW Action and the T&K Action are referred to collectively herein as the "Akin Gump Actions.").

Both the Waterbury Action and the Akin Gump Actions are brought on behalf of virtually identical putative classes asserting claims under the Racketeering Influenced and Corrupt Organizations Act ("RICO") and state law predicated on precisely the same allegations of misconduct. More specifically, both groups of cases allege that USF, the second largest food distributor in the United States, defrauded those customers with which it had entered into "cost-plus" agreements by artificially inflating the prices charged to them for food service products through the use of sham companies known as "VASPs" and undisclosed agreements with other USF suppliers

As discussed more fully herein, transfer of the Akin Gump Actions to the District of Connecticut for coordinated and consolidated pretrial proceedings with the Waterbury Action is warranted because:

---

[2] A copy of the CHW complaint is attached hereto as Exhibit B.

[3] A copy of the T&K complaint is attached hereto as Exhibit C.

- The Waterbury Action and Akin Gump Actions involve common issues of law and fact. Indeed, as described further below, notwithstanding the addition as defendants of USF's parent and two individuals formerly associated with VASPs,, the underlying factual allegations of the complaints and the central legal claims asserted in the Akin Gump Actions are virtually indistinguishable from those at issue in the Waterbury Action.

- The District of Connecticut is where the first action, the Waterbury Action, was filed almost a year before the Akin Gump Actions were filed.

- The Waterbury Action is well underway and is being vigorously prosecuted by lead counsel and interim class counsel appointed by the Connecticut District Court– Drubner & Hartley, L.L.C. and Whatley, Drake & Kallas, LLC. The Connecticut District Court has developed substantial familiarity with the facts and complexities of the underlying alleged scheme as a result of the substantive and procedural activity that has taken place in the case over the course of the past year. Among other things, the Connecticut District Court has considered and has ruled on a motion to stay discovery, a motion to compel and a motion for entry of a confidentiality order, and is in the process of ruling on a motion to dismiss and a motion for a preservation order. Most recently, the Connecticut District Court directed the parties to file a joint proposed schedule for the remainder of pretrial proceedings in the action, which is being negotiated and will be submitted shortly.

- Discovery in the Waterbury Action is also substantially underway. In this regard, among other things, the Waterbury Plaintiffs have successfully defeated a motion to stay discovery filed by USF, served initial document requests on USF, securing the production of approximately 572,150 pages of documents to date, successfully moved to compel the production of additional documents from USF, served a Rule 30(b)(6) deposition notice and interrogatories on USF, as well as third party document subpoenas on several entities. Additionally, the Waterbury Plaintiffs have engaged in extensive "meet and confer" discussions with USF's counsel over a broad array of discovery issues, including negotiations establishing search terms to be used in connection with electronic discovery. The Waterbury Plaintiffs have also responded to document requests served by USF and have produced approximately 18,500 pages of responsive documents.

- The District of Connecticut is the most convenient forum for the actions to proceed, as it is in close geographic proximity to USF and all of the key witnesses in this case – including all but one of the additional defendants named in CHW's complaint who are located on the East Coast. Additionally, Royal Ahold, the one exception, is located in Europe, which is closer to the District of Connecticut than either the Northern District of California or the Southern District of Illinois. Further, USF's counsel, the Waterbury Plaintiffs' counsel, and CHW and Thomas & King, Inc.'s ("T&K") counsel, Akin Gump, are all located on the East Coast,

3

which is also more conveniently located to the District of Connecticut than the Northern District of California or the Southern District of Illinois.[4]

As a result of the foregoing, to permit the Akin Gump Actions to be litigated separately – or to be litigated in a jurisdiction other than the one in which the Waterbury Action is pending and discovery has been proceeding over the course of the past ten months – would be a waste of judicial resources, would result in duplicative discovery and potentially inconsistent pretrial rulings, and would place an unnecessary burden on the parties and witnesses that are relevant to the actions. Accordingly, given the substantial common legal and factual issues in the Waterbury Acton and the Akin Gump Actions and the advanced posture of the Waterbury Action, the Waterbury Plaintiffs respectfully request the transfer of the Akin Gump Actions to the District of Connecticut for coordinated and consolidated pretrial proceedings with the Waterbury Action.

## PROCEDURAL BACKGROUND

### a.    The Commencement of the Waterbury Action in October 2006

After an extensive pre-filing investigation, on October 19, 2006, the Waterbury Plaintiffs filed a class action complaint in the United States District Court for the District of Connecticut on behalf of themselves and all other entities and individuals that purchased products from USF pursuant to cost-plus agreements, alleging that USF engaged in a scheme to fraudulently inflate the prices it charged to its cost-plus customers.[5] On November 8, 2006, the Waterbury Plaintiffs filed a RICO Case Statement providing further detail regarding the alleged RICO violations.

---

[4] Additionally, in the past, Royal Ahold has been represented by the same counsel as USF located in New York.
[5] The initial complaint was filed by Waterbury Hospital and Cason, Inc. Frankie's Franchise Systems Inc. joined the action as a named plaintiff at the time the Waterbury Plaintiffs filed an amended complaint, as described below.

4

On December 18, 2006, the Waterbury Plaintiffs filed an Amended Class Action Complaint (the "Amended Complaint"), the operative complaint in the Waterbury Action. The Amended Complaint alleges that USF violated RICO and breached its contractual obligations by obtaining artificially inflated invoices for products purchased through VASPs and from other suppliers. USF would then use these invoices as its stated acquisition costs, which it would use to calculate the prices charged to its cost-plus customers. After receiving payment from USF, however, the VASPs and suppliers would kick-back to USF the difference between the amounts they should have charged for the products and the amounts reflected on the invoices they provided to USF. As a result of this scheme, the Amended Complaint alleges that USF was able to overcharge its cost-plus customers by hundreds of millions of dollars.

### b. The Extensive Proceedings That Have Taken Place In The Waterbury Action

Since its commencement, the Waterbury Action has been vigorously litigated, as described below.

On December 29, 2006, USF filed a motion to stay discovery pending a decision on its anticipated motion to dismiss the Waterbury Plaintiffs' Amended Complaint. On January 19, 2007, the Waterbury Plaintiffs opposed the motion. On February 1, 2007, USF's motion to stay discovery was denied and discovery was permitted to proceed. The next day, on February 2, 2007, USF moved to dismiss the Amended Complaint. The Waterbury Plaintiffs opposed the motion and briefing on the motion was completed on April 11, 2007.

On February 7, 2007, the Waterbury Plaintiffs sought the entry of an order appointing Drubner & Hartley and Whatley Drake to serve as lead counsel and interim

class counsel in the Waterbury Action to promote the just, expeditious, and cost-effective resolution of the claims pending against USF. Although USF opposed this motion, on April 11, 2007, the motion was granted and Drubner & Hartley and Whatley Drake were appointed to serve in these positions.

From the outset of the Waterbury Action, the Waterbury Plaintiffs have actively pursued discovery. On January 11, 2007, the Waterbury Plaintiffs served their First Request for Production of Documents. Subsequent to the District of Connecticut's February 1, 2007 ruling denying USF's motion to stay discovery, the Waterbury Plaintiffs initiated and engaged in an extensive "meet and confer" process with USF which is ongoing at this time. On June 11, 2007, the Waterbury Plaintiffs filed a motion to compel the production of documents to resolve certain outstanding issues that came to light as a result of the meet and confer process and the Waterbury Plaintiffs' review of documents produced by USF. At the same time, the Waterbury Plaintiffs filed a motion seeking the entry of an order providing for the preservation of documents. USF opposed both motions on July 2, 2007. On August 1, 2007 the District of Connecticut Court entered an order granting, in part, and denying, in part, the motion to compel.

As a result of the Waterbury Plaintiffs' efforts, to date USF has produced approximately 572,159 pages of documents. The parties have also successfully negotiated the entry of a protective order. Further, the parties have been "meeting and conferring" to address multiple discovery issues, such as the scope of USF's search for relevant, responsive electronic data and e-mail and the proper term list to be used in connection with the electronic searches presently being conducted by USF in connection with discovery. The Waterbury Plaintiffs have also served a number of subpoenas on

certain relevant and related parties, such as PriceWaterhouseCoopers LLP and Protiviti, Inc., accounting firms retained by outside counsel to Royal Ahold and USF, respectively, to investigate accounting irregularities at USF, including its use of the VASPs. The Waterbury Plaintiffs have also served a subpoena on White & Case, which issued an opinion letter (later withdrawn) regarding USF's exposure to claims from its cost-plus customers related to its use of the VASPs, and has served a subpoena on Gordon Redgate, who ran several of the VASPs.

USF also served document requests and Rule 30(b)(6) deposition notices directed to the Waterbury Plaintiffs. The parties met and conferred regarding these requests and the Waterbury Plaintiffs have produced approximately 18,500 pages of responsive documents to USF and are presently searching for electronically-stored documents and information responsive to USF's requests.

### c. The Duplicative Akin Gump Actions Are Filed Ten Months after the Commencement of the Waterbury Action

On August 17, 2007 – approximately ten months after the commencement of the Waterbury Action – Akin Gump filed a complaint on behalf of CHW in the Northern District of California. Like the Waterbury Action, the CHW Action is brought on behalf of a putative class of entities and individuals that purchased products from USF pursuant to cost-plus agreements. As in the Waterbury Amended Complaint, the CHW complaint alleges that USF violated RICO and state law by overcharging its cost-plus customers through the use of artificially inflated invoices for products purchased through VASPs and from other suppliers, which USF used to calculate the prices charged to its cost-plus customers. Also as in the Waterbury Amended Complaint, the CHW complaint alleges that after receiving payment from USF, the VASPs and suppliers would kick-back to

7

USF the difference between the amounts they should have charged for the products and the amounts reflected on the invoices they provided to USF.

The following week, on August 24, 2007, Akin Gump filed another complaint on behalf of T&K in the Southern District of Illinois. The T&K complaint is virtually identical to the CHW complaint. Indeed, with the exception of several paragraphs pertaining specifically to T&K and the omission of a claim brought under California state law, the T&K complaint is a verbatim copy of the CHW complaint. Thus, the fraudulent scheme alleged in the T&K complaint, like the scheme alleged in the CHW complaint, is substantively the same as the scheme alleged in the Waterbury Plaintiffs' Amended Complaint.

As of the date that this memorandum was submitted, nothing has taken place in the Akin Gump Actions beyond the filing of a complaint. Significantly, Akin Gump, along with one of the other firms representing T&K, met with the Waterbury Plaintiffs' counsel several times between December, 2006 and January, 2007 to discuss the Waterbury Action. During these meetings, it was clear that Akin Gump was fully aware of the status of the Waterbury Action and was monitoring the proceedings. However, rather than filing complaints on behalf of its clients in the District of Connecticut, Akin Gump chose to file two separate but identical complaints in two geographically disparate locations in an effort to avoid the most logical jurisdiction for the actions to proceed. Indeed, in the present circumstances, there is no logical reason why Akin Gump would file identical class action complaints in two different jurisdictions other than an attempt to increase the odds that the Panel would establish an MDL transferee court in a jurisdiction other than the District of Connecticut.

# ARGUMENT

## I. THE WATERBURY ACTION AND AKIN GUMP ACTIONS MEET THE REQUIRMENTS FOR TRANSFER AND CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407

Pursuant to 28 U.S.C. § 1407, a party may request that this Panel designate a centralized forum for management of identified actions whenever cases pending in different districts threaten duplicative discovery, and transfer of the cases would "promote the just and efficient conduct of [the] actions." 28 U.S.C. § 1407(a). "When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." *Id.* Transfer is warranted when it would eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts. *See In re Cygnus Telecomms. Tech. LLC Patent Litig.*, 177 F. Supp. 2d 1375, 1376 (J.P.M.L. 2001) (transfer pursuant to Section 1407 is "necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary.").

### A.   Transfer is Appropriate Pursuant to 28 U.S.C. § 1407

The Waterbury and Akin Gump Actions are premised upon the same core allegations. In this regard, the substantive factual and legal theory of the complaint in the Akin Gump Actions are identical to that of the Waterbury Action – *i.e.*, that USF engaged in a scheme to fraudulently inflate the prices it charged to its cost-plus customers through the use of VASPs and agreements with other suppliers. Moreover, both the Waterbury Action and the Akin Gump Action are brought on behalf of virtually identical putative

classes of entities and individuals that purchased products from USF on a "cost-plus" basis.

Indeed, the principal difference between the Waterbury Action and the Akin Gump Actions is that the complaints in the Akin Gump Actions name as defendants USF's parent, Royal Ahold, as well as Brady Schofield and Gordon Redgate, two individuals that ran VASPs. The inclusion of these defendants, however, in no way detracts from the overriding similarity of the cases. In this regard, although not currently named as a defendant in the Waterbury Action, the Waterbury Amended Complaint makes numerous references to Royal Ahold, and the Waterbury Plaintiffs are engaged in discovery concerning Royal Ahold's role in the fraud.[6] Additionally, it should be noted that USF has announced that Royal Ahold has entered into an agreement to indemnify USF for any liability arising out of the Waterbury Action and the Waterbury Plaintiffs have served an interrogatory intended to probe the terms of that agreement.

Likewise, the Waterbury Amended Complaint makes reference to the VASPs run by Schofield and Redgate, and the Waterbury Plaintiffs are in the process of obtaining discovery regarding these two individuals' companies. Indeed, much of this information is in USF's possession, since subsidiaries of USF have now acquired most of the assets of the VASPs pursuant to termination agreements. The Waterbury Plaintiffs have already requested and are in the process of obtaining the documents from these VASPs, including all electronically-stored and other documents relating to the VASPs' dealings with USF. Further, prior to the commencement of the Akin Gump Actions, the Waterbury Plaintiffs drafted and began the process of serving a subpoena on Gordon Redgate requesting

---

[6] Many of the Akin Gump Actions' allegations relating to Royal Ahold's participation in the alleged scheme and false statements concerning the VASPs are virtually identical to assertions contained in the Amended Complaint and in briefing in the Waterbury Action.

documents and information relating to the VASPs he ran and their dealings with USF. In short, regardless of their status, Royal Ahold, Schofield and Redgate are centrally involved in both the Waterbury Action and the Akin Gump Actions, and their status as defendants in the Akin Gump Actions does not expand the scope of the case or the relevant discovery in the actions.[7]

Because the actions are rooted in the same misconduct, the discovery necessary for the resolution of the Akin Gump Actions will necessarily duplicate the discovery that the Waterbury Plaintiffs have already been successfully pursuing, obtaining, and reviewing in connection with the Waterbury Action. Moreover, the cases will involve the same fact witnesses and a nearly identical set of responsive documents. On this basis alone, the Panel has repeatedly recognized that the creation of a centralized MDL forum is highly appropriate. *See, e.g., In re Merscorp, Inc., Real Estate Settlement Procedures*, No. 1810, 473 F. Supp. 2d 1379 (J.P.M.L. 2007) (holding that centralization under Section 1407 was warranted since all actions involved common questions of fact and centralization would promote just and efficient conduct of the litigation, and was necessary in order to eliminate duplicative discovery); *In re NSA Telecomms. Records Litig.*, 444 F. Supp. 2d 1332, 1334 (J.P.M.L 2006) (reaching same conclusion); *In re Cobra Tax Shelters Litig.*, 408 F. Supp. 2d 1348, 1349 (J.P.M.L. 204 ("Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and

---

[7] In any event, transfer "does not require a complete identity or even majority of common factual issues as a prerequisite" *In re NSA*, 444 F. Supp. 2d at 1334. The Akin Gump Actions also include several additional state law counts, such as a California state law claim on behalf of a California sub-class asserted in the CHW Action, but proving these claims will depend upon the same evidence that is pertinent to the claims in the Waterbury Action. Consistent with the principle described in *In re NSA Telecomms*, these variations do not preclude the transfer of the Akin Gump Actions to the District of Connecticut for coordinated and consolidated proceedings with the Waterbury Action.

the judiciary."); *In re Capital One Bank Credit Card Terms Litig.*, 201 F. Supp. 2d 1377, 1378 (J.P.M.L. 2002) ("[T]hese actions share sufficient complex common questions of fact...").

Transfer of the actions that are the subject of this motion to a single district will also "prevent inconsistent pretrial rulings" and "conserve the resources of the parties, their counsel, and the judiciary." *In re NSA*, 444 F. Supp. 2d at 1334. In this case, transfer of the Akin Gump Actions to the District of Connecticut will "prevent inconsistent pretrial rulings" – not only as to overlapping discovery disputes, but "especially with respect to overlapping class certification requests." *In re Rio Hair Naturalizer Prods. Liab. Litig.*, 904 F. Supp. 1407, 1408 (J.P.M.L. 1995). The Panel has frequently recognized that "class certification questions . . . amplify[y] the need to have a single judge oversee the class action issues in these... actions to avoid duplicative efforts and inconsistent rulings in this area." *In re Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. 651, 655 (J.P.M.L. 1981). *See also In re Household Goods Movers Antitrust Litig.*, 2007 WL 2386409, at *1 (J.P.M.L. Aug. 16, 2007) (transferring putative class action case to jurisdiction where "first-filed and more advanced action" was pending and stating that "[c]entralization under Section 1407 will eliminate duplicative discovery; prevent inconsistent pretrial rulings, especially with respect to class certification; and conserve the resources of the parties, their counsel and the judiciary").

Moreover, the Panel has frequently recognized the benefits that occur by placing substantially similar – if not identical – litigations under the supervision and oversight of a single judge for coordinated or consolidated pretrial proceedings. *See, e.g., In re Banc of America Inv. Services, Inc.*, 466 F. Supp. 2d 1353, 1354 (J.P.M.L. 2006) ("Transfer

under Section 1407 will have the salutary effect of assigning the present actions and any future tag-along actions to a single judge who can formulate a pretrial program ... that ensures that pretrial proceedings will be conducted in a streamlined manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties and the courts."); *In re Cobra Tax Shelters Litig.*, 408 F. Supp. 2d at 1349 ("Transfer under Section 1407 will offer the benefit of placing all actions in this docket before a single judge who can structure pretrial proceedings to accommodate all parties' legitimate discovery needs....").

In the instant case, the District Court Judge and Magistrate Judge who have presided over the Waterbury Action over the course of the past ten months are intimately familiar with all of the motion practice, substantive issues, and ongoing discovery disputes. Therefore, as set forth below, transfer of the Akin Gump Actions to the District of Connecticut will conserve judicial resources that would otherwise be expended if the Akin Gump Actions remained in either the Northern District of California or the Southern District of Illinois. Moreover, given the virtual identity of the parties and legal claims in the actions, transfer of the Akin Gump Actions to the District of Connecticut would not substantially increase the burden on the District Court in Connecticut in managing the litigation. This is not a situation in which a multiplicity of legal claims and parties has the potential to overwhelm a single transferee court.

### B. The District of Connecticut is the Most Appropriate Forum for Transfer of These Actions

Once it has determined that transfer is appropriate under § 1407, the Panel should transfer the actions to the District which will best serve the convenience of the parties and the witnesses as well as the just and effective conduct of the actions. *In re*

*Computervision Corp. Sec. Litig.*, 814 F. Supp. 85, 86 (J.P.M.L. 1993). In this case, the proper venue for any MDL is the District of Connecticut. As described above, the Waterbury Action is the first-filed and most advanced action, two reasons commonly cited by the Panel when determining an appropriate court for transfer. *See In re Wireless Tel. Federal Cost Recovery Fees Litig.*, 293 F. Supp. 2d 1378 (J.P.M.L. 2003) (constituent cases transferred to district where the first filed and most advanced case was already proceeding); *In re General Motors Corp. "Piston Slap" Prods. Liab. Litig.*, 314 F. Supp. 2d 1386 (J.P.M.L. 2004) (first filed); *In re Mush Cay Litig.*, 330 F. Supp. 2d 1364 (J.P.M.L. 2004) (first filed, most advanced); *In re Elevator and Escalator Antitrust Litig.*, 2004 WL 2913166 (J.P.M.L. Dec. 7, 2004) (first filed); *In re Rubber Chemicals Antitrust Litig.*, 2004 WL 3015739 (J.P.M.L. Dec. 21, 2004) (same).

Here, the Akin Gump Actions have only just been filed. In contrast, the Waterbury Action has been actively litigated over the course of the past ten months and discovery is well underway. As noted above, the parties in the Waterbury Action have engaged in extensive motion practice, including the full briefing of a motion to dismiss and have sought the Court's assistance to resolve several discovery disputes. Given the posture of the case, in which the litigation has already advanced to the point that the Court has been required to assess the complex issues that are at the heart of this action, and has necessarily been involved in supervising and overseeing its overall progress, the Court is well-familiar with both discovery-related issues as well as the legal and factual issues related to the scheme that lies at the heart of both the Waterbury and Akin Gump Actions. In view of the Waterbury Court's familiarity with the complex issues in this

case, transfer of the Akin Gump Actions to the District of Connecticut would further the goals of judicial efficiency.

Moreover, the parties in the Waterbury Action are already deeply involved in discovery. The Waterbury Plaintiffs have already received and are presently in the midst of reviewing approximately 572,159 pages of documents produced by USF in response to the Waterbury Plaintiffs requests for production. Additionally, the parties have also engaged in extensive, ongoing negotiations over discovery issues, including how the complex task of identifying and retrieving electronically-stored documents, data and e-mail will be managed by USF. Further, as noted above, the Waterbury Plaintiffs have actively pursued discovery from relevant non-parties including accounting firms, law firms and individuals knowledgeable about USF's relationship with the VASPs. The fact that discovery has been proceeding apace for many months now, by itself, is sufficient to justify transfer to the District of Connecticut. *See, e.g., In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, 374 F. Supp. 2d 1353, 1354 (J.P.M.L. 2005) (transferring the case to the District of New Jersey, where an action had been pending for over one year and discovery had commenced, as opposed to jurisdictions in which other actions had been pending for only a few months); *In re Falstaff Brewing Corp. Antitrust Litig.*, 434 F.Supp. 1225, 1231 (J.P.M.L. 1977) (transferring case to the Eastern District of Missouri because "the discovery schedule in [that] action [was] the most advanced").

Finally, the District of Connecticut is located on the East Coast of the United States, in close proximity to USF, counsel for USF and the plaintiffs, and all of the key witnesses in this case, including additional defendants named in the Akin Gump Actions.[8]

---

[8] The defendants named in the Akin Gump Actions consist of: Royal Ahold (The Netherlands); USF (Maryland); Brady Schofield (Florida); and Gordon Redgate (New Jersey). The complaints in the Akin

The Akin Gump Actions, in contrast, have been filed in California and East St. Louis, Illinois. If the case were to proceed in either of those districts, the parties would face a greater and unnecessary burden due to the distances involved. The Panel regularly keeps cases in the same jurisdiction, or one in close proximity, to the witnesses and defendants of an action. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, 483 F.Supp.2d 1353, 1354 (J.P.M.L. 2007) (transferring case to West Coast because of its convenience to Asia-based defendants); *In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 469 F. Supp. 2d 1348 (J.P.M.L. 2006) (transferring case to District of Columbia because, among other things, most of the "documents and witnesses [were] likely to be in or near the District of Columbia"); *In re Rivastigmine Patent Litig.*, 360 F.Supp.2d 1361, 1362 (J.P.M.L. 2005) (transferring case to Southern District of New York, noting that "the district is also near both a plaintiff and a defendant, which are located in a neighboring state"); *In re Methyl Methacrylate (MMA) Antitrust Litig.*, 435 F.Supp.2d 1345 (J.D.M.L. 2006) (transferring case to Eastern District of Pennsylvania because, among other things, "the district [was] an accessible location that [would] be geographically convenient for many of this docket's litigants, witnesses and counsel"). Transferring this case to District of Connecticut will be vastly more convenient for an overwhelming number of the individuals and entities that are critical to the resolution of this case. In contrast, the only nexus to the Districts in which the Akin Gump Actions are pending is the fact that the named plaintiffs have their corporate headquarters within these Districts. Standing alone,

---

Gump Actions also list additional relevant parties: Frozen Farms, Inc. (Rhode Island); Produce Solutions, Inc. (Rhode Island); Seafood Marketing Specialists, Inc. (Rhode Island); Specialty Supply & Marketing, Inc. (Massachusetts); Commodity Management Systems, Inc. (New Jersey); and Private Label Distribution, Inc. (New Jersey). USF's counsel, lead counsel and interim Class counsel appointed by the Court in the Waterbury Action, and Akin Gump, are all located on the East Coast as well.

this is an insufficient basis for keeping these putative class action cases in these Districts given the proximity of the District of Connecticut to parties, witnesses, and counsel.

## CONCLUSION

For the foregoing reasons, the Waterbury Plaintiffs respectfully request that the Panel enter an order transferring the Akin Gump Actions to the District of Connecticut for coordinated and consolidated pretrial proceedings with the Waterbury Action pursuant to 28 U.S.C. § 1407.

Dated: August 28, 2007

DRUBNER & HARTLEY, L.L.C.

By: _____

James E. Hartley, Jr.
500 Chase Parkway
Waterbury, CT 06708
(203) 753-9291

-and-

Charles Hellman
Cary Talbot
One Penn Plaza, Suite 4507
New York, NY 10119
(212) 736-2121

**WHATLEY, DRAKE & KALLAS, LLC**
Joe R. Whatley, Jr.
Edith M. Kallas
Deborah Clark-Weintraub
1540 Broadway, 37th Floor
New York, NY 10036
(212) 447-7070

*CO-LEAD COUNSEL AND INTERIM CLASS COUNSEL IN THE WATERBURY ACTION*

**GRAY & WHITE**
Mark Gray
1200 PNC Plaza
Louisville, KY 40202
(502) 585-2060

**FOOTE, MEYERS, MIELKE & FLOWERS**
Robert M. Foote
416 South Second Street
Geneva, IL 60134
(630) 232-6333

**STROM LAW FIRM, PLLC**
J. Preston Strom, Jr.
1501 Main Street, Suite 700
Columbia, SC 20201
(803) 252-4800

*ADDITIONAL PLAINTIFFS' COUNSEL IN THE WATERBURY ACTION*